IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.L., a minor, by and through his parents, MICHAEL LORDAN and JILL LORDAN, Husband and Wife, 10 Dressage Court York, PA 17404<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL YORK SCHOOL DISTRICT; JEFFREY HAMME, Assistant Principal, Central York High School, and MICHAEL SNELL, District Superintendent, 775 Marion Road York, PA 17406<br><br>Defendant. | Case No. |

# COMPLAINT

1. This is a civil action under 42 U.S.C. § 1983 and Pennsylvania law seeking damages, declaratory and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States as well as the laws of the Commonwealth of Pennsylvania; engaging in disciplinary action against Plaintiff for his exercise of constitutionally protected speech; using unconstitutionally vague rules as a basis for discipline of Plaintiff;

and exceeding their authority with respect to Plaintiff by using his off-grounds, out-of-school conduct to discipline Plaintiff.

2. This case arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. Sections 1983 and 1988, and 22 Pa. Code § 12.9. The relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Section 1983 and Rule 57 of the Federal Rules of Civil Procedure.

3. This action arises from Defendants' failure to maintain lawful policies, and its unlawful discipline of R.L., and exclusion of R.L. from the Central York High School ("High School") and related activities during a crucial period of his youth.

4. This Court is an appropriate venue for this action pursuant to 28 U.S.C. Sections 1391(b)(1) and (2). The actions complained of took place in this judicial district; evidence and witnesses relevant to the allegations are present in this judicial district; and all of the parties are residents and present in this judicial district.

## PARTIES

5. Plaintiff R.L. is a 15-year-old ninth-grade student at the Central York High School ("High School") in the Central York School District. R.L. lives with his parents in Manchester Township, York County, Pennsylvania.

6. Plaintiffs Jill and Michael Lordan are the parents of R.L.. They bring this action on behalf of their minor son.

7. Defendant Central York School District ("District") is a political subdivision of the Commonwealth of Pennsylvania, and a "person" subject to suit within the meaning of 42 U.S.C. Section 1983. The District maintains its administrative offices at 775 Marion Road, Springettsbury Township, York County, Pennsylvania 17406.

8. Defendant Jeffrey Hamme ("Hamme") is the Assistant Principal of the High School, and is, in that capacity, obliged to act in conformity with the United States Constitution and applicable federal and state laws. At all relevant times, Hamme acted under color of state law. Hamme is sued in his individual and official capacities.

9. Defendant Michael Snell ("Snell") is the Superintendent of the District, and is, in that capacity, obliged to act in conformity with the United States Constitution and applicable federal and state laws, and to ensure that the District and its officials comply with those laws. At all relevant times, Snell acted under color of state law. Snell is sued in his individual and official capacities.

## FACTS

10. R.L. has been a student of the District since kindergarten (2003), and is currently a ninth-grade student at the High School. R.L. has always been a good

student, an active participant in extracurricular activities, and an active member of the community and his church.

11. R.L. had no history of discipline prior to the events described in this action.

12. On October 23, 2013, as a result of a bomb threat, the High School was evacuated at approximately 9:30 a.m. and students, including R.L., were dismissed and sent home at approximately 11:30 a.m.

13. Following the evacuation, while away from school property, using a personal machine, R.L. published a post on his Facebook page which read: "Plot twist: They don't find the bomb and it goes off tomorrow." or "Plot twist: Bomb not found. Goes off tomorrow."[1]

14. Facebook is a social media network through which individual members are able to publish material to be seen by individuals ("Facebook friends") who have chosen to be in the publisher's network.

15. R.L.'s post was an expression of R.L.'s anxiety regarding the bomb threat, and a misplaced attempt at humor. The post did not represent a true threat or obscenity as those terms are defined. R.L.'s use of the term "plot twist" would

---

[1] R.L. removed the post from his Facebook page when he learned that it could be misinterpreted, but before he was aware that the District would use the post as the basis for disciplinary action against him. As a result, the Plaintiffs do not have a record of the precise language used in the post.

have been recognized as sarcasm by R.L.'s peers, as R.L. uses the term regularly in his vernacular to signify sarcasm and irony.

16.  Prior to October 23, 2013, the District was aware of R.L.'s use of the term "plot twist" to signify sarcasm as he had used it in a post on his Twitter[2] account during an emergency drill at the High School. The District had taken note of R.L.'s "Tweet" during the earlier intruder drill, but never discussed that matter with R.L. or his parents until after his October 23, 2013 Facebook post.

17.  R.L.'s Facebook post was not materially disruptive to the school environment or a direct threat to anyone.

18.  During the early afternoon of October 23, 2013, the District administration learned of R.L.'s Facebook post, as did the Springettsbury Township Police Department ("Police").

19.  At approximately 3:15 p.m. on October 23, 2013, well after the District was aware of R.L.'s Facebook post, R.L. returned to the school to gather personal items from one of his classrooms that he needed for his football game that evening, as well as his personal mobile device. After retrieving the necessary items, R.L. joined his teammates to eat and prepare for that evening's football game at Red Lion High School.

---

[2] Twitter is a social media network through which individual members may publish material to be seen by chosen subscribers to the publisher's network. Posts on Twitter are known as "Tweets".

20. After retrieving his personal mobile device, R.L. removed his earlier post from his Facebook page.

21. Several hours after the District was informed of R.L.'s post, and well after R.L. had returned to the High School to join his football team, someone from the High School's administrative team contacted Mr. Lordan to discuss R.L.'s Facebook post, and asked Mr. Lordan to bring R.L. to the High School. Mr. Lordan informed the caller that R.L. was at the High School and that the team bus was likely still on school premises.

22. After determining that the team bus was in route to the football game, the caller asked Mr. Lordan to meet Snell, the District Superintendent, at the football game to discuss the Facebook post with R.L., to which Mr. Lordan agreed.

23. Snell met with both Mr. Lordan and R.L. during the football game at Red Lion High School and questioned R.L. about his Facebook post. R.L. acknowledged having authored the post, and agreed, in retrospect, that it had been an ill-advised publication under the circumstances.

24. At the end of their conversation, Snell reported to R.L. and Mr. Lordan that R.L. would be suspended from school for 10 days, and that a more formal meeting would be scheduled to discuss the matter with District administration. At the time, Snell did not identify any particular District policy or rule that R.L. was alleged to have violated.

25. R.L. was permitted to remain at the football game and ride the bus back to the High School with his team.

26. On October 24, 2013, Mr. and Mrs. Lordan received notice, via email, that R.L. had been suspended for 10 days as a result of a "terroristic or bomb threat."

27. On the morning of October 24, 2013, the Springettsbury Township Police Department called the Lordans and both parents accompanied R.L to their office. R.L. was questioned by police detectives and the Police Chief about his involvement in the legitimate bomb threat the school experienced. The Police determined that R.L. was not involved in the bomb threat received by the school, and that no charges against R.L. were warranted. The Police Chief expressed surprise about the severity of the District's initial discipline of R.L. based on the facts, as well as concern about the ramifications of the punishment on R.L. The Police Chief offered Mr. and Mrs. Lordan advice on securing R.L.'s quick return to school.

28. On October 25, 2013, Mr. and Mrs. Lordan met with members of the High School administration, during which the administration acknowledged that R.L. was not a suspect in the bomb threat that the school had experienced. Following the meeting, the District issued a notice indicating that R.L. was suspended pending a Superintendent or Board Level Hearing, and that "[t]he

incident, which prompted this suspension, included [R.L.] engaging in behavior that caused a disruption to the school environment."

29. The October 25, 2013 notice also cited the High School Handbook's prohibition on "[b]ehavior or items brought to school that are inappropriate, that may cause a disruption to the school environment."

30. On October 28, 2013 Mr. Lordan received an email from Hamme, the High School Assistant Principal, who wrote, "As per your request, Mr. Cauffman has asked me to email you the change in terminology for the behavior that was originally listed on the referral form for [R.L.]. The new terminology reads as follows: Behavior or items brought to school that are inappropriate, that may cause a disruption to the school environment."

31. On October 29, 2013, Mr. and Mrs. Lordan received a letter from Snell indicating that R.L. was alleged to have violated the provision of the Student Code of Conduct involving "behavior or items brought to school that are inappropriate, that may cause a disruption to the school environment," and indicating that the conduct could lead to exclusion from school by suspension or expulsion.

32. The District held a discipline hearing on November 6, 2013 after which the District expelled R.L. for an additional thirteen (13) days to follow initial 10-day suspension.

33. Following the hearing, the District issued a written adjudication which contained a number of erroneous and unsupported findings of fact based on the evidence and testimony introduced, including:

    a. "[R.L.] voluntarily admitted to posting the bomb threat on Facebook;"

    b. "[R.L.] and his parents apologized to the Committee of the Board for the substantial disruption caused to the School District as a result of the Facebook post;" and

    c. "[R.L.]'s bomb threat materially and substantially disrupted the operations of the school on October 23 and, if left unaddressed, would have materially and substantially disrupted the operations of the school the following day."

34. In truth, while R.L. acknowledged publishing the Facebook post at issue, he never acknowledged making a "bomb threat." In fact, no witness at the hearing suggested that R.L.'s Facebook post amounted to a "bomb threat," and the District had specifically amended the earlier charges against R.L. to eliminate its allegation that R.L. had made a terroristic or bomb threat.

35. Neither R.L. nor his parents, nor anyone else for that matter, suggested at the hearing that R.L.'s actions caused a "substantial disruption" to the school environment. In fact, neither R.L. nor his parents acknowledged having

caused any disruption at all to the school or educational process. R.L. apologized and expressed regret for his actions, and Mrs. Lordan apologized for any concern or distraction caused by R.L.'s Facebook post. But, neither R.L. nor his mother spoke of any disruption to the District, much less causing one.

36. No testimony or evidence produced at the hearing supported a finding that R.L.'s post amounted to a threat to anyone or anything. Furthermore, no testimony or evidence produced at the hearing supported a finding that R.L.'s post caused or would have caused a material and substantial disruption to the operations of the District.

37. The facts of this case indicate that R.L.'s post caused no further disruption to the District or the educational process than it was experiencing already as a result of a legitimate bomb threat, unrelated to R.L.

38. The provisions in the District's student handbook under which R.L. was punished are unconstitutionally overbroad and vague on their face and as applied in this case as they fail to distinguish out-of-school speech from in-school expression and they are not limited to student speech that causes a material and substantial disruption to the school day.

39. The District's vague and overbroad policies prohibit and chill speech that is protected by the First Amendment.

40. Defendants' punishment of R.L. for his protected out-of-school speech amounts to a violation of the First Amendment to the United States Constitution.

41. The District has no published policy or rule which would have provided R.L. with adequate notice that his October 23, 2013 Facebook post violated a school rule. R.L.'s punishment for behavior he had no way to know was prohibited violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

42. Defendants' punishment of R.L. for his post which did not materially and substantially interfere with the educational process, threaten serious harm, encourage unlawful activity, or interfere with another individual's rights was a violation of Pennsylvania law.

43. As a result of the Defendants' actions, R.L. remained out of school from October 24, 2013 through December 3, 2013, during which time he was prohibited from participating in any school related activities and from entering District property.

44. R.L. was denied appropriate academic instruction during the term of his expulsion in addition to valuable social interaction and participation in school activities.

45. As a result of his unlawful expulsion, R.L. received grades on final exams which were significantly lower than his own average grade in each respective class, and which caused his class grades and GPA to decline.

46. As a result of his expulsion, R.L. missed the last several games of his football season and the team banquet, along with invaluable social interaction which accompanies those activities.

47. Although R.L. was enrolled in a theatre class, he was denied the opportunity to participate in or even to watch the school play as a result of his unlawful expulsion.

48. R.L. experienced a drop in confidence, self-esteem, trust of authority, and enjoyment of school as a result of the Defendants' actions. Following the events described herein, and as a result of the Defendants' actions, R.L. asked his parents to explore alternatives to the District for his education.

49. As a result of Defendants' unlawful actions, R.L.'s school file is marred by the record of expulsion which may be disclosed to college admissions officers, military recruiters, or employers.

## CAUSES OF ACTION

## COUNT I Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988

## Violation of First Amendment Speech Rights Against all Defendants

50. A school district may not punish students for off-campus, out-of-school speech unless that speech constitutes a true threat or causes a material and substantial disruption to the school environment.

51. Moreover, the First Amendment requires that policies and rules which regulate expression are not so vague and/or overbroad so as to quell protected speech.

52. In this case, R.L. was punished for off-campus, out-of-school speech which was not a true threat and which did not cause a material and substantial disruption to the school. Additionally, the catch-all provision of the High School Handbook, on which the District relied to punish R.L., is both vague and overbroad on its face and as applied in this matter. Accordingly, Defendants violated the First Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

## COUNT II Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988

### Violation of Fourteenth Amendment Due Process Rights Against all Defendants

53. A school district violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution when punishes a student for behavior without first providing the student adequate notice that the particular behavior is prohibited.

54.     In this case, the District has no policy or rule which would reasonably have notified R.L. that his October 23, 2013 Facebook post would lead the District to take disciplinary action against him.

55.     By excluding R.L. from school without first providing him adequate notice that his behavior was prohibited, the Defendants violated the Fourteenth Amendment to the United States Constitution.

## COUNT III Pennsylvania Statutes

## Violation of Pennsylvania Code Title 22, Section 12.9(b) Against all Defendants

56.     Title 22, Section 12.9(b) of the Pennsylvania Code provides that students have a right to express themselves unless the expression materially and substantially interferes with the educational process, threatens serious harm to the welfare of the school or community, encourages unlawful activity, or interferes with another individual's rights.

57.     In this case, Defendants punished R.L. for his expression that did not materially and substantially interfere with the educational process, threaten serious harm, encourage unlawful activity, or interfere with the rights of another.

58.     By doing so, Defendants violated R.L.'s rights under Pennsylvania law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court provide the following relief:

a. Declare that Defendants' disciplinary action against R.L. for his October 23, 2013 Facebook post violated his rights under the First and Fourteenth Amendments, as well as 22 Pa. Code § 12.9(b);

b. Declare that the District's policies and/or rules used to punish speech which takes place at a student's home and off of school grounds are excessively vague and overbroad both on their face and as applied in this case, and thereby violate the First and Fourteenth Amendments;

c. Declare that R.L. was not provided adequate notice that the behavior for which he was punished was prohibited, and that by punishing R.L. without first providing adequate notice, Defendants violated the Due Process Clause of the Fourteenth Amendment;

d. Enjoin Defendants to:

   i. expunge from R.L.'s record and file any reference to the incident in question or the discipline action against R.L.;

   ii. eliminate from R.L.'s records any reference to absences associated with his unlawful expulsion between October 24, 2013 and December 3, 2013;

   iii. revise the District policies to eliminate unconstitutionally vague policies and/or rules which may have a chilling effect on the protected expression of students; and

   iv. refrain from punishing any student for off-campus, out-of-school behavior that does not violate a criminal statute;

 e. Award reasonable damages to the Plaintiffs in an amount to be determined at trial;

 f. Award Plaintiffs' costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

 g. Grant such other relief as the Court deems just and proper.

Dated this 11th day of March 2014.

           Respectfully submitted,

           CGA Law Firm

           <u>/s/ Zachary E. Nahass, Esq.</u>
           Zachary E. Nahass, Esquire
           Attorney PA No: 314834
           CGA Law Firm
           135 North George Street
           York, Pennsylvania 17401
           (717) 848-4900
           (717) 843-9039 (f)
           znahass@cgalaw.com
           *Counsel for Plaintiff*